**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re Application of

SPS CORP I – FUNDO DE INVESTIMENTO EM
DIREITOS CREDITORIOS NAO PADRONIZADOS,

For an Order Pursuant to 28 U.S.C. § 1782 to Conduct
Discovery for Use in Foreign Proceedings

Case No. 20 Misc. ___

### _EX PARTE_ APPLICATION OF SPS CORP I – FUNDO DE INVESTIMENTO EM DIREITOS CREDITORIOS NAO PADRONIZADOS FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

SPS Corp I – Fundo De Investimento Em Direitos Creditorios Nao Padronizados

("Applicant"), by and through its undersigned counsel, Kellner Herlihy Getty & Friedman LLP,

respectfully submits this Application for judicial assistance, pursuant to 28 U.S.C. § 1782, in

obtaining documentary and testimonial evidence for use in foreign proceedings. Applicant seeks

evidence from (1) financial institutions and clearing house; (2) companies owning or managing

an apartment in New York City; (3) the individual residing in that apartment; (4) individuals and

entities involved in the sale of a real estate property in New York City; and (5) LIM College:

(1) Citibank, N.A.; The Bank of New York Mellon Corporation; Société Générale;

   HSBC Bank USA, N.A.; BNP Paribas USA; Barclays Bank; JPMorgan Chase Bank,

   N.A.; Bank of America, N.A.; Wells Fargo Bank, N.A.; and The Clearing House

   Payments Company LLC (collectively, the " Entities");

(2) The Claridge's Company LLC ("Claridge"); and Manhattan Skyline Management

   Corp. ("Manhattan Skyline") (collectively, "the NY Apartment Respondents");

(3) Gabrielle Miranda Fischer, an individual residing in New York City ("Gabrielle");

1

(4) LIM College; and

(5) Katherine Holman; Humphrey Willard; Andrew M. Klinger; Langen & Langen, P.A.; Katz & Matz, P.C.; and Tellulah LLC (collectively, "the NY Sale Respondents").

The Entities, the NY Apartment Respondents; Gabrielle; LIM College; and the NY Sale Respondents will be referred collectively as the "Respondents."

**Introduction and Factual Background**

1.      The facts relevant to this Application are set forth below and in the sworn Declaration of Henrique Rodrigues Forssell. ("Forssell Declaration").

2.      Applicant seeks assistance from the United States District Court in and for the Southern District of New York in obtaining documentary and testimonial evidence from the Respondents. The Respondents are (1) financial institutions or clearing house found and transacting business in this District, (2) companies found and transacting business in this District and owning or managing real estate located in this District, and (3) individuals found and transacting business exclusively in connection with real estate located in New York or residing in this District. This documentary and testimonial evidence is necessary and for use in the Foreign Proceedings[1] and Contemplated Proceedings in Brazil. (Forssell Decl., ¶¶13-38).

3.      In 2017, Itaú Unibanco S.A. ("Itaú") commenced three proceedings in Brazil against Totalcom Comunicações e Participações Ltda., Green Tree Participações Ltda, D+ Brasil Entretenimento, Conteúdo e Comunicação Total Ltda., and Eduardo Fischer to enforce three credits granted by Itaú and represented by credit certificates. *Id*.

4.      In 2019, Itaú assigned the credit certificates to Applicant, and Applicant was substituted to Itaú in the Foreign Proceedings. *Id.*

---

[1] Unless otherwise indicated, capitalized terms or names not otherwise defined herein shall have the meaning ascribed to them in the Declaration of Henrique Forssell dated April 27, 2020 and the Declaration of Thomas Vandenabeele dated May 1, 2020.

5.      As a result of the foregoing, Applicant is now the owner and holder of the following three enforceable instruments under Brazilian law:

  a.      Certificate No. 101113020013400, in the amount of BRL 1,800,000.00;

  b.      Certificate No. 100113080002500, in the amount of BRL 24,619,839.76;

  c.      Certificate No. 100113080002800, in the amount of BRL 20,724,566.65.

6.      Despite Applicant's extensive efforts in the Foreign Proceedings and ongoing collection efforts against the defendants in such Proceedings have yielded no return. *Id*.

7.      Based on Applicant's investigation, all limited liability entities defendants in the Foreign Proceedings are connected to the individual defendant Fischer. *Id*., ¶43.

8.      Fischer is a well-known figure of the Brazilian advertising industry. *Id*., ¶39. He created and was at the head of an international conglomerate of advertising companies. *Id*. As the manager of these companies, Fischer caused them to contract loans with banks, including with Applicant's assignor, while Fischer would personally guarantee these loans. *Id*., ¶41.Neither the companies nor Fischer have repaid the loans that are the object of the Foreign Proceedings. *Id*., ¶¶13-38.

9.      Fischer is now seemingly insolvent but yet maintains a wealthy lifestyle, which has led to suspicions and investigations on his resources. *Id*., ¶68. Through independent investigations, the Applicant has obtained evidence demonstrating that Fischer may be concealing his assets to defraud his creditors and that he is the final beneficiary of sizeable funds, assets, and valuable entities. *Id*.

10.      Based on Applicant's investigation, Fischer has created a series of domestic and offshore shell companies, including the entities subject to the Foreign Proceedings, to hold assets and bank accounts in various jurisdictions including New York and organize his own personal insolvency. *Id*., ¶43.

11.     Fischer has transferred significant assets and large sums of money in fraud of his creditors' rights, including the Applicant's, through bank accounts in the United States and offshore. *Id*., ¶44. In particular, Fischer has reported in his income tax return to be the holder of bank accounts in JP Morgan Chase Bank, N.A., a bank found in New York City. *Id*.

12.     Fischer has reported owning an interest in Tellulah LLC, a Delaware company that owned an apartment in the Upper East side of Manhattan until May 2014. *Id*.; ¶54. This property was sold for USD 5.5 million, and the purchase price appears to have been paid in cash by husband and wife Katherine Holman and Willard Humphrey, represented by Karen Masuko, Esq. of Katz & Matz, P.C., a New York law firm. *Id*. In this transaction, a presumably retired New York attorney with significant Brazilian connections, Andrew M. Klinger, executed the closing documents as a member of Tellulah LLC, while a Florida law firm also with significant Brazilian connections, Langen & Langen, represented the company. *Id*. Already in 2006, when Tellulah LLC purchased the Upper East side apartment, Hillary Langen of Langen & Langen executed documents as the manager of Tellulah LLC. *Id*.

13.     Further, Fischer may also be the beneficial owner of assets, bank accounts, and entities in the name of his three daughters, Karina Miranda Fischer, Paloma Miranda Fischer, and Gabrielle Miranda Fischer. *Id*., ¶¶38, 46-50, 55. Specifically, Gabrielle is a twenty-two-year old residing in the luxurious area of Central Park in New York City at 101 W 55th Street, Apartment 13, New York, NY, 10019 and attends LIM College in New York City. *Id*., ¶58. It is believed that the Related Entities are used to pay for Gabrielle's rent, tuition fees, and living expenses in this District. *Id*., ¶¶38, 55.

### Nature of Evidence Sought and Relief Requested

14.     Applicant seeks documentary and testimonial evidence from the various Entities found and transacting business in the Southern District of New York. *Id*., ¶¶56-65. These Entities

are commonly known to act as correspondent, intermediary, or otherwise clearinghouse banks for U.S. dollar-denominated wire transfers passing from domestic banks to international banks, and vice versa, where funds are believed to be held in the names of entities beneficially owned by Fischer. *Id.*

15.     Specifically, the evidence sought from the Entities are wire transfers routed through New york City and records related thereto involving the Discovery Subjects from May 1, 2013 to the present. *Id.*, ¶66. Each entity is known or reasonably believed to be owned, in whole or in part, by Fischer, or, alternatively, an alter ego of Fischer. *Id.*

16.     Additionally, Applicant also seeks documentary and testimonial evidence from the NY Apartment Respondents, demonstrating the source of the funding of apartment 13  at 101 West, 55th Street, New York, NY, 10019 (the "Apartment") where Gabrielle, Fischer's twenty-two-year old daughter, resides. *Id.*, ¶61. Evidence that the Apartment is owned or financed by entities connected to Fischer will advance Applicant's claim in the Foreign Proceedings and Contemplated Proceedings that Fischer is in fact the beneficial owner of these entities, and that the Brazilian Court should thus pierce the corporate veil. *Id.*, ¶¶56, 60-61. Therefore, it is appropriate and necessary for Applicant to seek documentary and testimonial evidence from the companies that own or manage the apartment where Gabrielle resides. *Id.*

17.     Similarly, Gabrielle is a student and the source of the funds used to pay for her tuitions, rent, and living expenses is relevant to show that entities, seemingly independent of Fischer, are actually beneficially owned by him and that he used them to pay for his personal expenses and those of his daughter. *Id.*

18.     Further, Applicant seeks documentary and testimonial evidence from the NY Sale Respondents, demonstrating that the sale of the Upper East Side apartment was in fact orchestrated by Fischer and benefited him. *Id.*, ¶62. Evidence that the Upper East Side apartment was owned or financed by entities connected to Fischer will also advance Applicant's claim in

the Foreign Proceedings and Contemplated Proceedings that Fischer is in fact the beneficial

owner of these entities, and that the Brazilian Court should thus pierce the corporate veil. *Id.*,

¶¶56, 60, 62-63. Therefore, it is appropriate and necessary for Applicant to seek documentary

and testimonial evidence from the individuals and entities that took part in the transaction for the

sale of the Upper East Side apartment. *Id.*

19. The evidence sought in New York is crucial to uncovering the amount and

location of funds held abroad or otherwise transferred through intermediary entities.  This should

allow Applicant to trace the assets of Fisher, his Related Companies and Gabrielle, necessary to

plead and prove its claims against Fischer of fraudulent transfers, alter ego and veil piercing

claims against third parties, known and unknown, under Brazilian law. *Id.*, ¶63.

20. Accordingly, this Application seeks leave to serve subpoenas on the Respondents,

in substantially the same form as the sample subpoenas attached hereto as **Exhibit A** (on the

Entities), **Exhibit B** (on the NY Apartment Respondents), **Exhibit C** (on LIM College), **Exhibit

D** (on Gabrielle Miranda Fischer), and **Exhibit E** (on the NY Sale Respondents). *Id.*, ¶66. The

subpoenas seek documentary and testimonial evidence regarding wire transfers involving the

Discovery Subjects, Fischer's assets, and documentary and testimonial evidence regarding the

funding of the rental apartment in New York, the source of the funds used to pay for Gabrielle's

rent, tuition and living expenses in New York, and the sale of the Upper East Side apartment.

As demonstrated below, Applicant meets the mandatory requirements and discretionary factors for

granting this relief under Section 1782.

## ARGUMENT

## I.    STANDARD FOR GRANTING RELIEF

Section 1782 is "provided for assistance in obtaining documentary and other tangible

evidence as well as testimony." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 248

(2004). The statute provides that "[t]he district court of the district in which a person resides or is

found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." *In re del Valle Ruiz*, 2019 U.S. App. LEXIS 30002 (2d Cir. Oct. 7, 2019), quoting 28 U.S.C. § 1782(a).

Courts have distilled §1782's language into a two-part test consisting of a mandatory component and a discretionary component for granting relief. *First*,

> A district court is authorized to grant a § 1782 request where: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.
>
> *Symeou v. Hornbeam Corp. (In re Hornbeam Corp.)*, 722 F. App'x 7 (2d Cir. 2018); see

also *Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015), citing *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012).

*Second*, "[t]o guide district courts in the decision to grant a Section 1782 petition, the Supreme Court in *Intel* discussed non-exclusive factors (the '*Intel* factors') to be considered in light of the 'twin aims' of section 1782 . . . ." *In re del Valle Ruiz*, 2019 U.S. App. LEXIS 30002, citing *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 244 (2d Cir. 2018). Those factors are (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Id*., citing *Intel*, 542 U.S. at 264-65.[2]

---

[2] The Court's discretionary analysis should be guided by the twin congressional policy aims of § 1782. *Brandi-Dohrn*, 673 F.3d 76, 81 (2d Cir. 2012) ("District courts must exercise their discretion under § 1782 in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.")

## II.   APPLICANT MEETS SECTION 1782'S STATUTORY REQUIREMENTS

### A.   <u>The Respondents Reside or Are Found In This District</u>

#### 1.   <u>Legal Standard</u>

Section 1782 does not define "found." *In re del Valle Ruiz*, 2019 U.S. App. LEXIS

30002. However, "§ 1782(a) supports a flexible reading of the phrase "resides or is found." *In re*

*del Valle Ruiz*, 2019 U.S. App. LEXIS 30002, citing *Edelman v. Taittinger (In re Edelman)*, 295

F.3d 171 (2d Cir. 2002). The Second Circuit has "repeatedly recognized Congress's intent that

§1782 be 'interpreted broadly' […]" (*Id.*, citing *Brandi-Dohrn*, 673 F.3d 76) and held that the

"statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due

process." *In re del Valle Ruiz*, *supra*.

Noting that the Supreme Court has not addressed specific jurisdiction over nonparties, the

Second Circuit held that:

> where the discovery material sought proximately resulted from the respondent's
> forum contacts, that would be sufficient to establish specific jurisdiction for
> ordering discovery. That is, the respondent's having purposefully availed itself of
> the forum must be the primary or proximate reason that the evidence sought is
> available at all. On the other hand, where the respondent's contacts are broader
> and more significant, a petitioner need demonstrate only that the evidence sought
> would not be available but for the respondent's forum contacts.

*In re del Valle Ruiz*, 2019 U.S. App. LEXIS 30002.

#### 2.   <u>Gabrielle Miranda Fischer Resides or is Found in the Southern Disctrict of</u>
<u>New York</u>

A person "resides or is found in" a district when that person may be physically served

with a subpoena in that district. *In re Edelman*, 295 F. 3d 171, 180 (2d Cir. 2002); *In re Godfrey*,

526 F.Supp.2d 417, 422 (S.D.N.Y. 2007).

---

(internal citations omitted); *Gushlak*, 486 Fed.Appx. at 218 (same); see also *Intel*, 542 U.S. at 252 (rejecting
additional requirements to granting relief as they "would disserve § 1782's twin aims.")

Here, Applicant's investigation and public records show that Gabrielle resides at 101 West 55th Street, Apt. 13F, New York, New York, 10019. (Forssell Decl., ¶¶48 & 58.) In addition, the discovery sought from Gabrielle proximately results from her contacts with this District. Applicant seeks documents relating to the source of funding for the Apartment located in this District in which Gabrielle resides, her living expenses in New York City and the source of funding for her tuitions at LIM College in New York City. *Id.*, ¶¶58, 60.

3. The NY Apartment Respondents, LIM College, and Katz & Matz, P.C. Reside or are Found in the Southern District of New York

A legal entity, as opposed to a natural person, "resides or is found in" a district, pursuant to § 1782, when it has engaged in systematic and continuous activity in the district. *Godfrey*, 526 F.Supp.2d at 422. To satisfy this latter standard, this Court has looked to whether the entity is incorporated or headquartered here. *In re Fernando Celso De Aquino Chad*, 2019 WL 2502060, at *3 (S.D.N.Y. 2019), citing *Matter of Fornaciari*, 2018 WL 679884, at *2 (S.D.N.Y. 2018). (looking to whether entities were headquartered in the District).

Accordingly, Claridge, Manhattan Skyline, LIM College, and Katz & Matz, P.C. reside or are found in this District by virtue of the location of their headquarters or offices: (1) Claridge maintains at least one office location and owns the building located at 101 West 55th Street, New York, New York, 10019 ("Building") (Forssell Decl., ¶58; Vandenabeele Decl. at ¶8); (2) Manhattan Skyline is incorporated under the laws of New York and maintains its principal executive office at 101 West 55th Street, New York, New York, 10019. Manhattan Skyline is the managing agent of the Building (*Id*); and (3)  Katz & Matz, P.C. is incorporated under the laws of New York and maintains at least one office at 1350 Avenue of the Americas, 3rd Floor, New York, NY 10019 (Forssell Decl., ¶58; Vandenabeele Decl. at ¶13).

LIM College is a fashion school in New York City, located at 12 E. 53rd st., New York, NY, 10022. (Vandenabeele Decl. at ¶9).

In addition, the discovery sought from the NY Apartment Respondents⸺documents relating to the source of funding for the Apartment⸺proximately results from their contacts with this District because Claridge owns the Building and Manhattan Skyline is the managing agent of the Building. Likewise, the discovery sought from LIM College-⸺documents relating to the source of Gabrielle's tuitions at LIM College in New York City⸺proximately results from its business activities (teaching) in this District. Finally, the discovery sought from Katz & Matz P.C.—documents relating to the transaction between Tellulah LLC and the rest of the NY Sale Respondents—proximately results from its contacts with this District because Karen Masuko, an attorney employed by Katz & Matz P.C., represented the buyer in the closing of the Upper East Side apartment located in Manhattan, New York City.

    4.   <u>Katherine Holman, Humphrey Willard, Andrew M. Klinger, Langen & Langen, P.A., and Tellulah LLC are Found in the Southern District of New York</u>

Courts in this District have found that a respondent is "found" in this District pursuant to § 1782 when the respondent has purposely directed his activities at the forum, the discovery order at issue is connected with such activities, and exercising jurisdiction for the purposes of the order would comport with fair play and substantial justice. *In re Del Valle Ruiz*, 342 F. Supp. 3d at 458, citing *Gucci America, Inc. v. Weixing Li.,* 768 F.3d 122, 136; *In re Lakhtakia*, No. 18-MC-501 (ALC), 2019 WL 3406659, at *4 (S.D.N.Y. 2019), appeal dismissed (Oct. 23, 2019); *Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd*., No. 17-MC-00216 (VEC), 2017 WL 3841874, at *5 (S.D.N.Y. 2017) ("At least one circuit has translated [the specific personal jurisdiction] test to nonparty discovery requests by focusing on the connection between the nonparty's contacts with the forum and the discovery order at issue").

Accordingly, Katherine Holman, Humphrey Willard, Andrew M. Klinger, Langen & Langen, P.A., and Tellulah LLC are found in this District by virtue of their contacts with this District because they voluntarily, actively, and knowingly took part of the May 2014 transaction

for the sale of an apartment located in this District, in the Upper East Side of Manhattan, New York City (Forssell Decl., ¶ 54). By taking part in a transaction involving real estate located in this District, the NY Sale Respondents have purposefully availed themselves of this forum.

The discovery sought—documents narrowly related to the sale of the Upper East Side apartment, including wire transfers, proofs of payments in relation to the transaction, and all the transaction documents—is directly connected to the NY Sale Respondents' connections with the forum. (*Id.*, ¶ 62).

As such, because Katherine Holman, Humphrey Willard, Andrew M. Klinger, Langen & Langen, P.A., and Tellulah LLC have all purposefully taken part into a transaction involving real estate in this District, so that it is reasonably foreseeable they would be hailed into court here, and because the discovery sought is narrowly tailored to seek only evidence closely related to this transaction, ordering the discovery at issue would comport with the notions of fair play and substantial justice. In addition, finding jurisdiction over the NY Sale Respondents furthers the policy aims of § 1782, and would allow Applicant to save judicial resources by dispensing Applicant of duplicating legal fees, efforts, and judicial fees to obtain adequate and necessary discovery.

5.   The Entities Reside or Are Found in This District

This Court has repeatedly granted applications pursuant to Section 1782 seeking intermediary bank discovery from the New York Banks and TCH. (Vandenabeele Decl., ¶¶34-43.) The discovery sought here directly relates to their contacts with this District, described in the Vandenabeele Declaration. (Vandenabeele Decl., ¶¶21-32). *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310 (S.D.N.Y. 2018) ("*Nike I*"), *aff'd*, *Nike, Inc. v. Wu*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018) ("*Nike II*"). Specifically, the discovery sought here is records relating to wire transfers and documents relating thereto routed through the New York Banks in New York City revealing the

11

complete picture of Discovery Subjects' movement of funds and that Fischer is not insolvent and is concealing his assets in the United States by using US-based companies. (Forssell Decl., ¶60).

The New York Banks act as worldwide correspondents in New York City to process U.S. Dollar denominated wire transfers. (Vandenabeele Decl., ¶¶17-20; see also Ex. D to Vandenabeele Decl., excerpts from the Worldwide Correspondents Bank Directory). It appears from the Worldwide Correspondents Bank Directory, that the banks processing U.S. Dollar denominated wire transfers passing from international banks, including banks in Brazil, are virtually all located in New York City and include most of the New York Banks. (Vandenabeele Decl., ¶¶22-32.)

The New York Banks and TCH not only act as worldwide correspondent banks or clearing system to process U.S. Dollar denominated wire transfers in New York City, but also have long-established connections to New York. They each maintain headquarters or branches in this District and have previously accepted and responded to subpoenas in Section 1782 applications, initiated by Applicant's New York counsel. (Vandenabeele Decl., ¶¶36-43.) In addition, the New York Banks are either participants in the Clearing House Interbank Payments System ("CHIPS"), the Federal Reserve's Fedwire Fund Service ("Fedwire"), or a major participant in the clearing of international U.S. Dollar denominated transfers. (*Id*., ¶20; Exs. A-B to Vandenabeele Decl.) Almost all New York Banks are registered with the New York Department of Financial Services ("NYDFS") to do business in New York, as required by N.Y. Banking Law § 200. (*Id*.; Ex. E to Vandenabeele Decl.)

The New York Banks' ability to conduct business and process U.S. Dollar denominated wire transfers is completely dependent upon its extensive use of its contacts in New York and the subject of the discovery sought through this Application. "This alone would be sufficient to establish that the Banks have sufficient minimum contacts with the forum, as 'the selection and repeated use of New York's banking system … constitutes purposeful availment of the privilege

of doing business in New York.'" *Nike I*, 349 F. Supp. 3d 310, quoting *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87 (S.D.N.Y. 2015) ("*Gucci III*") (internal quotation omitted).

The New York Court of Appeals has recognized the "widespread use of correspondent accounts nominally in New York to facilitate the flow of money worldwide, often for transactions that otherwise have no other connection to New York, or indeed the United States." *Licci v. Lebanese Can. Bank, SAL*, 20 N.Y.3d 327 (2012) ("*Licci III*"). Therefore, the repeated use of a correspondent account in New York, in effect, a "course of dealing" show "purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York and the United States." *Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013) ("*Licci IV*"), quoting *Licci III,* 20 N.Y.3d 327. Relying on *Licci III* and *Gucci III*, Chief Judge McMahon in *Nike II*, held that "the Banks' establishment and maintenance of correspondent accounts was sufficient to support the exercise of personal jurisdiction over the Banks for purposes of the Subpoenas." *Nike II*, 349 F. Supp. 3d 310.

Here, the discovery sought—wire transfers and documents relating thereto (i) identifying the ultimate beneficiary of transfers made by Fischer through the entities he controls; and (ii) relating to the entities benefiting from Fischer's transfers, for which the New York Banks were involved as originating bank, beneficiary bank, intermediate or correspondent bank to CHIPS, Fedwire, or otherwise facilitated interbank funds transfers—proximately results from TCH and the New York Banks' forum contacts with this District.

Moreover, TCH and the New York Banks would not suffer hardship as they are "simply required to produce" limited records maintained in this District. *Nike I*, 349 F. Supp. 3d 310 ("Here, as in *Gucci III*, such burdens are either 'minimal or non-existent,' as all of the Banks have physical branches in the forum, and can be no stranger to litigation in it [...]") (internal citation omitted); see also *First Am. Corp. v. Price Waterhouse Ltd. Liab. P'ship*, 154 F.3d 16

(2d Cir. 1998). Given the lighter burden placed on TCH and the New York Banks in the discovery context—who are asked only to provide evidence, not to defend their conduct or risk damages or other penalties—it is wholly consonant with due process to authorize Applicant to conduct discovery on the New York Banks, as the burden is "minimal or non-existent." *Nike I*, 349 F. Supp. 3d 310.

Accordingly, Applicant has satisfied the first requirement under § 1782.

### B.  The Discovery Sought is for use in a Proceeding in a Foreign Tribunal

Section 1782 expressly provides that evidence collected may be "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). See *Gushlak*, 486 F. App'x 215 (confirming that a §1782 application to conduct discovery for use in a foreign proceeding satisfied the statutory requirements of §1782); see also *Mees v. Buiter,* 793 F.3d 291 (2d Cir. 2015) ("an appplicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chances of success."); *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 116 (2d Cir. 2015) ("It is not necessary for the adjudicative proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding"). Seeking information to plead or prove a claim that has already been identified and articulated with particularity may be authorized under Section 1782. *In re Mangouras,* 2017 WL 4990655 (S.D.N.Y. 2017).

Here, the discovery sought by Applicant is for use in the Foreign Proceedings and Contemplated Proceedings. (Forssell Decl., ¶¶13-38.) The discovery sought in New York will not only lead to the discovery of assets which will be used in connection with the enforcement efforts in the Foreign Proceedings, but it will also allow Applicant to make a motion under applicable Brazilian law in these Proceedings to add claims for piercing the corporate veil and for fraudulent transfers. *Id*. and ¶¶4 & 63.

On January 24, 2020, this Court found that an application for "asset discovery" may be permissible under § 1782. *In re Gorsoan Ltd.*, No. 18-MC-431 (RA), 2020 WL 409729 (S.D.N.Y. Jan. 24, 2020). Judge Abrams reasoned that the "for use" requirement of 28 U.S.C. § 1782(a) is satisfied so long as the applicant demonstrates that he has the "practical ability" to use the discovery in the foreign proceeding and that he "will garner some advantage" in that proceeding by obtaining the requested discovery. *Id.*; see also *La Suisse, Societe d'Assurances Sur La Vie v. Kraus,* 62 F. Supp. 3d 358, 361 (S.D.N.Y. 2014) (holding that a post-judgment proceeding to enforce a default judgment in the United Kingdom was a proceeding in a foreign tribunal, and thus within the ambit of § 1782).

As explained in the Forssell Declaration, Applicant intends and has the ability to use the discovery obtained in New York as a basis to add claims for piercing the corporate veil and for fraudulent transfers within the pending Foreign Proceedings. (Forssell Decl., ¶35-38).

Particularly, Applicant has identified several entities that are, or likely are, beneficially owned by Fischer. *Id*., ¶43. Enforcement of the enforceable instruments will, accordingly, involve adjudicative proceedings in order to assert fraudulent transfer avoidance claims, and alter ego or corporate veil piercing claims against third parties, known and unknown. *Id*. Thus, Applicant will be able to use the discovery sought here to garner an advantage in the ongoing Foreign Proceedings and Contemplated Proceedings, thereby satisfying the second mandatory requirement of § 1782.

C.     **The Applicant is an Interested Person**

Finally, Applicant is an interested person in his capacity as party in each of the Foreign Proceedings and expected party in the Contemplated Proceedings. (Forssell Decl., ¶¶13-38). A person who has "participation rights" and "possesses a reasonable interest in obtaining judicial assistance… qualifies as an interested person within any fair construction of that term." *Intel*, 542 U.S. at 256-7 (2d Cir. 2004) (internal citations omitted); *RTI Ltd. V. Aldi Marine Ltd.*, 523

Fed.Appx. 750, 751-2 (2d Cir. 2013) (same) (summary order). A litigant in a foreign proceeding plainly falls within the definition of "interested person." *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) ("The legislative history to § 1782 makes plain that interested person includes a party to the foreign litigation.") (internal citations omitted). As such, Applicant meets the third mandatory requirement.

### III.   APPLICANT MEETS THE *INTEL* DISCRETIONARY FACTORS

As noted above, once the District Court has determined that the mandatory requirements for relief under Section 1782 are met, the Court is free to grant discovery in its discretion. *In re del Valle Ruiz*, 2019 U.S. App. LEXIS 30002. Additionally, that discretion must be guided by the twin policy aims of § 1782: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts. *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012). Here, these discretionary factors weigh in favor of granting the requested relief.

*First*, there is no expectation that any of the Respondents will become a party to the Foreign Proceedings or to the Contemplated Proceedings. (Forssell Decl., ¶64). and as such, this Application constitutes the only practical and timely method for obtaining the needed evidence for use there. *Id*. Indeed, absent the instant Application, the discovery sought would almost certainly remain outside the reach of the Brazilian Courts. *Id.*

*Second*, counsel in Brazil, has advised that there is no indication courts in Brazil would not be receptive to the documentary and testimonial evidence sought through the instant Application. *Id.*, ¶65. Even if the documents were not used as evidence in those proceedings, the Second Circuit has held that Section 1782(a) contains no requirement that particular evidence be admissible in a foreign proceeding to be considered "for use in a proceeding in a foreign or international tribunal." *Brandi-Dohrn*, 673 F.3d at 77.

*Third*, the evidence sought through the instant application would likely be admissible and does not otherwise circumvent any proof-gathering restrictions in each jurisdiction. *Id.*

*Fourth*, this Application is not unduly intrusive or burdensome. The proposed requests to the Respondents, demonstrated in the sample subpoenas attached as **Exhibit A**, **Exhibit B**, **Exhibit C**, **Exhibit D**, and **Exhibit E** to the Application, are not unduly intrusive or burdensome because they are of limited scope. *Id.*, ¶ 66. The proposed requests seek documents for the limited period beginning May 1, 2013, with an even more limited period beginning January 1, 2016 for document requests related to Gabrielle's arrival in New York City. *Id*. Furthermore, the requests seek only documents regarding Fischer, Gabrielle, the Upper East Side apartment sale, and the Related Entities, which are known or reasonably believed to be owned, in whole or in part, by Fisher or, alternatively, as an alter ego. *Id*. Applicant further seeks limited records relating to wire transactions for which the New York Banks were involved as originating bank, beneficiary bank, intermediate or correspondent bank to CHIPS, Fedwire, or where the New York Banks and TCH otherwise facilitated interbank funds transfers, as well as documents relating thereto, for the limited period beginning May 1, 2013 to the present. *Id*. This period is likely within the New York Banks and TCH' document retention policies and the documentary evidence sought is of the type that the New York Banks and TCH regularly and easily retrieve and produce as third parties or actual parties in litigation. *Id*.

For the foregoing reasons, each discretionary factor identified by the *Intel* Court weighs in favor of granting the Application.

## IV.   APPLICANT SHOULD NOT BE REQUIRED TO GIVE NOTICE TO FISHER, THE DISCOVERY SUBJECTS AND THE RESPONDENTS

Applicant respectfully requests that it not be required to serve the Application upon (i) Fisher, (ii) the Discovery Subjects, or (iii) the Respondents. Applicant further requests that, should the Court grant this Application, Applicant not be required to serve (i) Fisher or the (ii) Discovery Subjects, with the order granting the Application and the subpoenas issued to the

Respondents.

As explained above, District Courts in the Second Circuit routinely handle §1782 requests on an *ex parte* basis. *In re Hornbeam Corp.*, 722 F. App'x 7. Courts have also held that "the ultimate target of a § 1782 discovery order issued to third parties have standing to challenge the district court's power to issue a subpoena under the terms of an authorizing statute." *In re Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997). However, service on the party or parties against whom the discovery is likely to be used is not mandatory. While Federal Rule of Civil Procedure 45 requires service of third-party subpoenas on parties to the underlying litigation and the Federal Rules of Civil Procedure govern subpoenas issued under 28 U.S.C. § 1782, it is within the Court's authority to "order otherwise." *In re Hornbeam Corp.*, 722 F. App'x 7; see also *In re Reyes*, 2019 WL 6170901, at *1 (S.D.N.Y. 2019).

Courts in this Circuit have exercised such discretion and declined to quash subpoenas automatically based on the lack of notice absent some showing of prejudice. *In re Speer*,754 F. App'x 62, 63–64 (2d Cir. 2019), citing *Malmberg v. United States*, 2010 WL 1186573, at *2 (N.D.N.Y. 2010); *Ragusa v. United Parcel Serv.*, 2008 WL 4200288, at *1 (S.D.N.Y. 2008); see also *In re Hornbeam Corp., supra* (finding "no abuse of discretion" in a district court's decision not to quash or vacate a subpoena based on a finding that the movant "did not establish prejudice from the lack of notice").

Further, in *In re Olga Kurbatova*, the applicant requested that she not be required to serve an expected defendant in a contemplated Swiss proceeding. Case No. 18-mc-469 (S.D.N.Y. 2018). The applicant successfully argued that there would be no prejudice to the expected defendant, as he would be permitted to adjudicate the admissibility of any discovery received by the applicant in response to the application in the contemplated proceeding at the appropriate time. *Id.,* citing *Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1101 (2d Cir. 1995) (stating that discovery and admissibility under foreign law is not relevant to the Section 1782 analysis

18

because foreign courts are more appropriately positioned to rule on these issues).

Here, as explained in the Foressell Declaration, the discovery sought from the Respondents will be used in the Foreign Proceedings and Contemplated Proceedings. (Forssell Decl., ¶68). Henrique Forssell further explains that, based on the investigation Applicant conducted, Fischer is now seemingly insolvent but maintains a wealthy lifestyle, which has led to suspicions and investigations on his resources. *Id*. As a result of independent investigations, Applicant has obtained evidence demonstrating that Fischer may be concealing his assets to defraud his creditors and that he is the final beneficiary of sizeable funds, assets, and valuable entities. *Id*.

Therefore, notice of the Application, the order granting the Application (should the Court grant the Application) and subpoenas to the Respondents, would advance Fisher's scheme by providing it the opportunity to potentially conceal or destroy evidence that could be used by Applicant in the Foreign Proceeds and/or further divert his assets and those of the entities he beneficially owns, and would frustrate and delay Applicant's full understanding of Fisher's movement of assets. *Id*., ¶69. Applicant would be significantly delayed in obtaining critical information to plead and prove its claims if the Court requires notice of the Application, the order granting the Application and the subpoenas to the Respondents, which would ultimately prejudice Applicant. *Id*.

Conversely, there would be no prejudice to the party against whom the discovery is likely to be used in the Foreign Proceedings as such party would be permitted to adjudicate the admissibility of any discovery received by Applicant in those proceedings at the appropriate time. *Id*., ¶ 70. As explained in the Forssell Declaration, the Brazilian Code of Civil Procedure provides that when a party presents new documents to a proceeding, the other party will have fifteen days to object to such new documents (BCCP, Article 437, §1º). *Id*., ¶ 71. Thus, in the event Applicant obtains relevant evidence from the Respondents, the due process will be

respected and the defendants int the Foreign Proceedings and Contemplated Proceedings will be able to object to the submission of such discovery into evidence. *Id*.

In light of the foregoing, the lack of notice of the Application would not prejudice Fisher, the Discovery Subjects or the Respondents. Likewise, the lack of notice of the order granting the Application (should the court grant the Application) and subpoenas to the Respondents would not prejudice Fisher or the Discovery Subjects. Therefore, the Court should exercise its discretion and not require Applicant to give such notice.

WHEREFORE, Applicant respectfully requests this Court to enter an Order, in the proposed, or substantially similar, form attached as **Exhibit F**:

(a) exercising its discretion, pursuant to 28 U.S.C. § 1782, and granting this Application for Judicial Assistance;

(b) ordering that discovery taken pursuant to this Application and Order will be governed by the Federal Rules of Civil Procedure;

(c) granting Applicant leave to conduct discovery pursuant to the Federal Rules of Civil Procedure, including, but not limited to, leave to serve the subpoenas, in substantially the same form as the sample subpoenas attached respectively as **Exhibit A**, **Exhibit B**, **Exhibit C**, **Exhibit D**, and **Exhibit E** to this Application, and take testimony;

(d) pursuant to § 1782 and to facilitate any testimony given in connection with this Application and Court Order, appointing Applicant as a person with the power to administer any necessary oath and take testimony or statement; and

(e) any other relief this Court deems just and proper.

Dated: May 7, 2020

Respectfully submitted,


By: _____/S/_____
          Thomas Vandenabeele

KELLNER HERLIHY GETTY & FRIEDMAN LLP
*Attorneys for SPS Corp I – Fundo de investimento em direitos*
*creditorios nao padronizados*
470 Park Avenue South–7th Floor
New York, NY 10016-6819
Telephone: 212-889-2121
Email: tv@khgflaw.com